IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-94

 No. COA21-157

 Filed 15 February 2022

 Mecklenburg County, No. 15 CVD 16856

 GABRIEL MEDINA, Plaintiff,

 v.

 BRANDY INGRAM de MEDINA, Defendant.

 Appeal by Plaintiff from Orders entered 6 March 2020 by Judge Tracy H.

 Hewett in Mecklenburg County District Court. Heard in the Court of Appeals 22

 September 2021.

 Fleet Law, PLLC, by Jennifer L. Fleet, for Plaintiff-Appellant.

 No brief filed on behalf of Brandy Ingram de Medina, Defendant-Appellee.

 WOOD, Judge.

¶1 Gabriel Medina (“Plaintiff”) appeals from an Amended Order Appointing a

 Parenting Coordinator (the “Amended PC Order”). Plaintiff also asks this Court to

 treat his brief as a petition for writ of certiorari to review an order issued sua sponte

 by the trial court pursuant to Rule 60(b)(1). In our discretion, we decline to treat

 Plaintiff’s brief as a petition for a writ of certiorari and dismiss his argument

 concerning the trial court’s Rule 60(b)(1) order. After careful review of the record and

 applicable law, we affirm the trial court’s Amended PC Order.
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 I. Factual and Procedural Background

¶2 The parties were married on December 17, 1999, and three children were born

 of their marriage. The parties subsequently separated on November 27, 2014 and

 signed a separation agreement the next day. While separated, the parties began a

 contentious litigation over matters concerning their three minor children, with

 Plaintiff filing four separate motions following his original complaint, and Brandy

 Medina (“Defendant”) filing three separate motions following her answer and

 counterclaims.

¶3 The parties divorced on March 14, 2016, but the contentious litigation

 continued. From March 4, 2016, to May 4, 2017, Plaintiff filed nine additional

 motions and Defendant filed two new motions. During the course of litigation,

 Plaintiff acquired a new counsel, Attorney Faith Fox, on January 25, 2017. On behalf

 of Plaintiff, Fox specifically filed a motion for contempt; a motion for continuance; a

 motion for ex-parte emergency child custody; a motion for protective order, to quash,

 for sanctions, and for attorney fees; a motion to compel discovery, for sanctions, and

 for attorney fees; motions in limine; and a motion to compel testimony, for sanctions,

 and for attorney fees.

¶4 On May 4, 2017, the parties entered into a Memorandum of Judgment/Order

 (the “MOJ”) to resolve their respective claims. Per the MOJ, the parties were granted

 joint legal and physical custody of the minor children. Accordingly, the parties agreed
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 that the minor children would live with Plaintiff and Defendant on alternating weeks.

 Plaintiff was granted final decision-making power over the health and education of

 the minor children and agreed to pay Defendant $1,200.00 per month in child

 support.

¶5 Defendant was granted final decision-making power over the religion and

 extra-curricular activities of the children, and she agreed to sign over the deed to the

 Parties’ marital home. Pursuant to the terms of the MOJ, both parties voluntarily

 dismissed their claims for full custody, breach of contract, attorney fees, and child

 support. If the parties disagreed on a matter concerning the children, they were

 obligated under the MOJ to agree to the appointment of a parenting coordinator. The

 MOJ was formalized and signed by the trial court judge the following day.

¶6 From July through September 2018, the parties continued to engage in heated

 litigation. Defendant filed a motion for contempt, asserting Plaintiff would “not

 respond to any requests to decide on a parent coordinator.” Plaintiff, additionally,

 moved out of the county where both parties had previously resided and moved the

 minor children into the school system in the county where he now resided. Thus,

 Defendant also filed a motion for modification of custody requesting that final

 decision-making authority over the education of the children be removed from

 Plaintiff. Defendant further filed a motion for a temporary parenting arrangement

 in order to return the children to the Mecklenburg County school system per the
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 Parties’ separation agreement’s requirement.

¶7 In response, Plaintiff filed a motion for contempt and attorney fees, claiming

 Defendant refused to appoint a parenting coordinator. Plaintiff also filed a motion

 for a prefiling injunction and a gatekeeper order, alleging Defendant had filed

 numerous “frivolous and groundless, often nonsensical” documents with the court.

 Plaintiff further asserted he had authority under the MOJ to relocate the children to

 a different school system and filed a motion to dismiss the temporary parenting

 arrangement, for sanctions, and for attorney fees.

¶8 Additionally, Plaintiff filed a motion to dismiss, for sanctions, and for costs on

 November 1, 2018, arguing Defendant had “filed multiple different motions on these

 claims in order to cause Father harm and harass him.” In the motion, Plaintiff

 asserted that the trial court “lack[ed] jurisdiction to hear this matter as it is a contract

 to be heard under Specific Performance pursuant to their Agreement.” On January

 8, 2019, Plaintiff filed another motion for a prefiling injunction / gatekeeper order,

 contending Defendant had made “numerous filings” and “blatant lies to the [c]ourt.”

¶9 The case proceeded to a hearing on the Parties’ respective motions on

 November 1, 2018. During the hearing, Fox argued the family court lacked

 jurisdiction to hear Defendant’s motion for contempt, motion for a temporary

 parenting arrangement, and motion to modify custody. Relying on Fox’s

 representations of fact and law, the court granted Plaintiff’s request for dismissals on
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 all of Defendant’s motions. That same day, Fox submitted a proposed order based on

 the November 1 hearing. Defendant promptly objected, citing many errors in the

 proposed order. In response, the trial court scheduled a hearing for April 12, 2019,

 to reconcile the proposed order.

¶ 10 On November 2, 2018, the trial court granted Plaintiff’s motion to appoint a

 parenting coordinator and entered an order appointing a parenting coordinator (the

 “Original PC Order”). The Original PC Order only made two decrees: “1. Father’s

 Motion to Appoint a Parenting Coordinator, is GRANTED[;] [and] 2. This Order is

 enforceable by the contempt powers of the state[.]” The court did not state what

 issues between the Parties were to be addressed by the parenting coordinator nor the

 extent of the parenting coordinator’s authority. As a result, various issues arose

 between the Parties concerning who possessed certain decision-making authority.

¶ 11 On April 12, 2019, the trial court conducted the hearing to reconcile the

 proposed order granting Plaintiff’s motion for dismissal of Defendant’s motions. Once

 more, Plaintiff reiterated his argument that the trial court lacked jurisdiction and

 requested the trial court to sign an order granting his motion to dismiss Defendant’s

 motions. Plaintiff additionally requested the trial court issue a gatekeeper order to

 estop Defendant “from filing motions without prior court approval.” The trial court

 signed the order proposed by Plaintiff’s attorney granting Plaintiff’s motion to dismiss

 Defendant’s motions and orally granted the gatekeeper order.
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

¶ 12 After the trial court signed the April 2019 order granting Plaintiff’s motion to

 dismiss, the trial court conducted an independent review of the case file. The trial

 court discovered the order granting Plaintiff’s motion to dismiss Defendant’s motions

 possessed multiple misstatements of fact. The trial court’s review of the file showed

 Defendant had not “filed any more motions than []father,” and Defendant did not file

 any motions related to “contract matters.” The trial court’s independent review

 further revealed the file did “not contain, or reference, any prior dismissals based on

 Family Court’s lack of jurisdiction.” As such, the trial court found the April 2019

 order prepared by Plaintiff’s attorney had multiple misstatements under the findings

 of facts portion, namely:

 Family Court []does not have jurisdiction over these
 matters, as it relates to these Parties and the Separation
 and Marital Settlement Agreement.

 Defendant/Mother is aware they are to seek the guidance
 of a Parent Coordinator, as outlined in the MOJ, and
 subsequent Order Appointing Parent Coordinator, prior to
 the filings of any subsequent motions.

 Defendant/Mother is aware that issues addressed in the
 Separation and Marriage Settlement Agreement, are not
 handled in Family Court.

 ...

 Defendant/Mother knows that Family Court does not have
 jurisdiction over these matters.

¶ 13 The trial court’s independent review further revealed that in addition to the
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 factual misstatements in the April 2019 Order, the gatekeeper order requested by

 Plaintiff’s attorney included another factual misstatement: “Defendant is fully aware

 that contractual disputes are improper before this Court, as the parties were before

 the appropriate court May 4, 2017, and entered into a Consent Order as it relates to

 the Separation Agreement on May 5, 2017.” Moreover, the trial court discovered it

 had relied on the requested gatekeeper order during the April 2019 hearing. The

 requested gatekeeper order also contained another additional factual misstatement,

 “per the MOJ, the parties were to consult with the Parenting Coordinator prior to any

 court filings.” However, this directive to consult with a parenting coordinator prior

 to any court filings was not in the MOJ nor in the Original PC Order. Thus, the trial

 court had reiterated a factually incorrect statement during the April 2019 hearing

 due to its reliance on the gatekeeper order requested by Plaintiff’s attorney.

¶ 14 In November 2019, the trial court notified the parties of the errors found as a

 result of its independent review. In the e-mail, the trial court alerted the parties of

 its intention to file a sua sponte Rule 60(b)(1) order to amend the factual and legal

 errors and attached an informal order for their review. Plaintiff, in response,

 disagreed that the trial court could issue a sua sponte Rule 60(b)(1) order and

 submitted a brief supporting his contention.

¶ 15 Thereafter, on February 6, 2020, Plaintiff and Defendant came before the trial

 court for a hearing on the trial court’s intention to issue a Rule 60(b)(1) order. During
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 the hearing, the trial court noted that a statement within the procedural history of

 Plaintiff’s memorandum of law was the “polar opposite” of a clause within the parties’

 November 2014 separation agreement: The procedural history in the memorandum

 of law stated “[t]he parties entered into a marital separation agreement which

 specifically states that the parties did not want the agreement incorporated into any

 subsequent divorce which is clearly reflected in the subsequent divorce judgment.”

 However, in actuality, the separation agreement provided “[t]he parties further agree

 that this Agreement shall be incorporated, by reference or otherwise, in the final

 judgment of divorce . . . .”

¶ 16 After the hearing, the trial court entered a “Sua Sponte Rule 60(b)(1) Order

 Reversing an Order to Dismiss Defendant’s Motions for Contempt; Temporary

 Parenting Arrangement; and Motion to Modify Child Custody” on March 6, 2020 (the

 “Rule 60(b)(1) Order”). Under the Rule 60(b)(1) Order, Plaintiff’s motion for a

 gatekeeper order was denied.

¶ 17 Pursuant to the Rule60(b)(1) Order, the April 2019 order which dismissed

 Defendant’s motions for contempt, motion for modification of custody, and motion for

 a temporary parenting arrangement was reversed and the issues were once more

 before the trial court. Any previous order requiring Defendant to pay attorney fees

 to Plaintiff also was reversed. Per the Rule 60(b)(1) Order, Defendant was permitted

 to request the family court to reset her previously dismissed motions for hearing. On
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 the same day, the trial court entered an Amended PC Order, establishing in more

 detail the method of payment for, the scope of, and the parenting coordinator’s

 authority under the PC Order.

¶ 18 Plaintiff filed a timely written notice of appeal of the Amended PC Order on

 April 8, 2020. Additionally, Plaintiff requests this court to treat his brief as a petition

 for a writ of certiorari for review of the sua sponte Rule 60(b)(1) Order.

 II. Discussion

¶ 19 Plaintiff raises several arguments on appeal; each will be addressed in turn.

 A. Petition for Writ of Certiorari

¶ 20 Plaintiff asks this Court to treat her brief as a petition for a writ of certiorari

 to review the Rule 60(b)(1) Order. To apply for a writ of certiorari, an applicant must

 “file a petition . . . with the clerk of the court of the appellate division to which appeal

 of right might lie from a final judgment in the cause by the tribunal to which issuance

 of the writ is sought.” N.C.R. App. P. 21(b). This Court does have the authority

 pursuant to our Rules of Appellate Procedure to treat a purported appeal as a petition

 for writ of certiorari, and we may grant the petition in our discretion. Luther v.

 Seawell, 191 N.C. App. 139, 142, 662 S.E.2d 1, 3 (2008). Here, Plaintiff failed to file

 a petition for writ of certiorari with our clerk of court; and, in our discretion, we

 decline to treat Plaintiff’s brief as a petition for writ of certiorari as it does not meet

 the requirements set forth by our Appellate Rules for such consideration. See N.C.R.
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 App. P. 21(c). Plaintiff’s petition for writ of certiorari is not properly before us, and

 we dismiss his argument concerning the Rule 60(b)(1) Order.

 B. The Amended Parenting Coordinator Order

 1. Standard of Review

¶ 21 Plaintiff first contends the trial court lacked authority to issue the Amended

 PC Order, arguing the Amended PC Order was, in effect, an order modifying the

 MOJ, and thus urges this Court to adopt a de novo standard of review. We disagree.

 Here, the Amended PC Order’s findings of fact acknowledged the Parties had entered

 into the MOJ on May 5, 2017, which “decreed that if the parties, after a good faith

 effort, vehemently disagree as to what is in the best interest of the children, they will

 agree to the appointment of a Parenting Coordinator (PC).” In other words, the MOJ

 did not establish the terms of a parenting coordinator but only bound the Parties to

 acquire a parenting coordinator should a disagreement arise. Additionally, the

 Original PC Order was signed eighteen months after the MOJ was issued, and the

 Original PC Order did not reference the MOJ.

¶ 22 Thus, the Amended PC Order was neither a part of, nor a modification to the

 MOJ, but rather an amendment to the Original PC Order. Therefore, because “[t]he

 trial court is vested with broad discretion in child custody cases,” the question before

 this court is whether the trial court abused its discretion by issuing the Amended PC

 Order. Nguyen v. Heller-Nguyen, 248 N.C. App. 228, 238, 788 S.E.2d 601, 607 (2016)
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 (quoting Dixon v. Gordon, 223 N.C. App. 365, 371, 734 S.E.2d 299, 304 (2012)); see

 Pulliam v. Smith, 348 N.C. 616, 624, 501 S.E.2d 898, 902 (1998).

 2. Analysis

¶ 23 Turning now to Plaintiff’s argument that the trial court erred, or in the

 alternative abused its discretion, by issuing the Amended PC Order, we are guided

 by N.C. Gen. Stat. § 50-99 which states, “[f]or good cause shown, the court may

 terminate or modify the parenting coordinator appointment upon motion of any

 party, upon the agreement of the parties, or by the court on its own motion.” N.C.

 Gen. Stat. § 50-99(a) (2021). See N.C. Gen. Stat. § 50-91(a) (2021) (“The court may

 appoint or reappoint a parenting coordinator at any time in a child custody action

 involving minor children brought under Article 1 of this Chapter on or after the entry

 of a custody order . . . [u]pon the court’s own motion.”); see also Nguyen, 248 N.C. App.

 at 240, 788 S.E.2d at 608. “Good cause” includes, but is not limited to, “lack of

 reasonable progress[,]” or a “determination that the parties no longer need the

 assistance of a parenting coordinator[,]” or an “[i]mpairment on the part of a party

 that significantly interferes with the party’s participation in the process[,]” or an

 “inability or unwillingness of the parenting coordinator to continue to serve.” N.C.

 Gen. Stat. § 50-99(c) (2021).

¶ 24 In accordance with Section 50-99, a trial court may sua sponte modify the

 parenting coordinator appointment if good cause is shown. Therefore, our inquiry
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 now turns to whether good cause existed to warrant the trial court to issue the

 Amended PC Order. We pause to note in the case sub judice that Plaintiff did not

 challenge any findings of fact in the Amended PC Order, and thus these facts are

 presumed to be supported by competent evidence and are deemed binding on appeal.

 Koufman v. Koufman, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (first citing Schloss

 v. Jamison, 258 N.C. 271, 275, 128 S.E.2d 590, 593 (1962); then citing Williams v.

 Williams, 97 N.C. App. 118, 121, 387 S.E.2d 217, 219, (1990)).

¶ 25 Here, the trial court found the following facts in the Amended PC Order,

 7. The May 5, 2017 Consent Order further decreed that if
 the parties, after a good faith effort, vehemently disagree
 as to what is in the best interests of the children, they will
 agree to the appointment of a Parenting Coordinator (PC).

 ...

 10. The Nov. 2, 2018 Order is a bare bones order which does
 not set out the issues to be addressed, nor the authority of
 the Parenting Coordinator as per . . . [N.C. Gen. Stat. §] 50-
 92.

 11. Particular issues in dispute are final decision making,
 specifically, how to consult with each other in good faith,
 school assignment, providing after school care, and other
 parenting and communication issues.

 12. The Court finds from prior hearings and filings that
 this is a high conflict case, as defined by . . . [N.C. Gen.
 Stat. §] 50-90, and that the [appointment of a] Parenting
 Coordinator is in the best interest of the children.

 The Amended PC Order’s findings of fact illustrate the Parties were significantly
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 impaired due to the minimal guidance in the Original PC Order such that they could

 not participate in the parenting coordinator process. Additionally, the Original PC

 Order’s lack of guidance halted reasonable progress between the Parties and the

 parenting coordinator as issues concerning the final decision-making power could not

 be resolved.

¶ 26 Furthermore, an examination of the Original PC Order shows it failed to

 comply with N.C. Gen. Stat. § 50-92 as it did not set out the “issues to be addressed

 nor the authority of the Parenting Coordinator . . . .” N.C. Gen. Stat. § 50-92(a)

 provides the

 authority of a parenting coordinator shall be specified in
 the court order appointing the parenting coordinator and
 shall be limited to matters that will aid the parties in
 complying with the court’s custody order, resolving
 disputes regarding issues that were not specifically
 addressed in the custody order, or ambiguous or conflicting
 terms in the custody order.

 N.C. Gen. Stat. § 50-92(a) (2021). However, the Original PC Order only states, “1.

 Father’s Motion to Appoint a Parenting Coordinator, is GRANTED[;] [and] 2. This

 Order is enforceable by the contempt powers of the state[.]” By so ordering, the

 Original PC Order does not specify the parenting coordinator’s authority as required

 by Section 50-92(a). Indeed, the Original PC Order’s absence of guidance for the

 parenting coordinator was further illustrated when the Parties met with a parenting

 coordinator, but both the Parties and the parenting coordinator had “questions
 MEDINA V. MEDINA

 2022-NCCOA-94

 Opinion of the Court

 regarding the process and terms of the Parenting Coordinator agreement.”

¶ 27 Accordingly, we hold the Original PC Order’s non-compliance with Section 50-

 92(a), paired with the trial court’s findings of fact in the Amended PC Order,

 sufficiently establishes good cause existed to warrant the entry of an Amended PC

 Order. Thus, the trial court did not abuse its discretion by issuing the Amended PC

 Order.

 III. Conclusion

¶ 28 After a careful review of the record and applicable law, we hold the trial court

 did not abuse its discretion by issuing the Amended PC Order and affirm the order of

 the trial court.

 AFFIRMED.

 Judges DILLON and COLLINS concur.